## WILLIAM A. WALL *v.* ALBERT N. CAMPBELL, JOHN K. CLARKE AND MARIE GAY, EXECUTORS AND EXECUTRIX RESPECTIVELY OF THE ESTATE OF FRANCIS GAY, DECEASED.

### No. 2044.

ARGUED DECEMBER 16, 1931.        DECIDED FEBRUARY 10, 1932.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is an action of assumpsit for $10,950, brought by William A. Wall, a civil engineer, as contractor, against the executors of the will of Francis Gay, deceased. The declaration as originally filed was based upon two counts. Under the first it was alleged that the plaintiff and the defendants' decedent, on or about January 13, 1926, entered into a contract whereby the plaintiff was "to supervise and perform all the engineering services which were required in order to develop water by a system of tunnels on lands belonging to said decedent" in Kalihi Valley, Oahu; that the decedent agreed to pay for all labor engaged in digging and constructing the tunnels; that the decedent further agreed to pay to the plaintiff

as compensation for his services "the value of one year's flow of water from all the tunnels constructed;" and that the value of the water was fixed by the parties at the rate of five cents per thousand gallons. It is further alleged under this count that the plaintiff supervised the work and performed all the necessary engineering services which were required in developing water by the construction of this system of tunnels; that the tunnels were constructed and produced "a daily average flow of water of not less than 600,000 gallons" and "a yearly flow of not less than 219,000,000 gallons" and that under the terms of the contract the value of the yearly flow was $10,950. The second count was for a *quantum meruit,* the allegation being that the services thus performed by the plaintiff were reasonably worth $10,950.

By amendment, at the end of the trial, a third count was added and this was that the plaintiff and the decedent, on July 5, 1928, "did account together * * * of and concerning the divers sums of money due and owing from said Francis Gay to said William A. Wall on account of the flow of waters from the tunnels constructed," that "it was then and there agreed that the water which was then flowing from said tunnels amounted to an average of 600,000 gallons per day," and "that on said account stated the said Francis Gay was found indebted to the said William A. Wall in the sum of $10,950.00."

It is further alleged that the formalities required by law in cases of claims against the estates of deceased persons had been complied with by the plaintiff. It is not disputed that in this respect all was done that should have been done.

Trial was had without a jury. Evidence was adduced by both parties. The trial judge filed a written decision in which he found in effect that the parties entered into a contract as alleged in the declaration. He further found

that "plaintiff and said Francis Gay, during his lifetime, agreed that plaintiff's compensation should be the sum of $10,950.00 in accordance with the aforesaid contract, that is, the water value per year at five cents per one thousand gallons based on a flow from the tunnels of 600,000 gallons daily." *Inter alia,* he said: "An attack was made upon the plaintiff's evidence and the accuracy of the measurements of water flowing from the tunnels which he constructed. However, in view of the fact that I am satisfied from the evidence that the plaintiff and Francis Gay came together and agreed that there was 600,000 gallons average daily flow coming from the tunnels and that plaintiff's compensation should be fixed upon such flow in accordance with the terms of the contract, it is now unnecessary to decide whether at that time there was such average daily flow coming from the tunnels." In concluding the opinion he said: "In conclusion I find from the evidence that plaintiff has established by a preponderance of the same the allegations of his amended complaint covered by the counts on the express contract and the account stated."

Two questions argued on this appeal are whether there was evidence sufficient to support a finding of an account stated and whether there was a finding by the trial judge that the work of the plaintiff resulted in the production of an· average daily flow for one year of 600,000 gallons of water.

According to the plaintiff's testimony, and upon this point there was no evidence to the contrary, the terms of the contract between the parties, in so far as they related to the matter of the plaintiff's compensation, were as stated in a letter written by the plaintiff to the decedent under date of January 13, 1926: "You to pay me for my services when the work is completed, the value of one year's flow of water from all the tunnels constructed.

The value of the water to be fixed at the rate of five (5) cents per 1000 gallons." Plaintiff's testimony was at first that the conversation between the parties which is claimed to have constituted an account stated occurred on July 5, 1928. Later, because of reliable testimony introduced by the defendants showing that in July, 1928, the decedent was not in the Territory of Hawaii, the plaintiff amended his testimony to the effect that the conversation in question had occurred "just before he went away" in May, 1928. As to the details of this conversation plaintiff testified in answer to the question, "What if anything else did he say in regard to whether— in regard to the water that had then been developed, if anything?" that "We had talked over the amount, he was satisfied that it was in excess of 600,000 gallons a day, and we agreed to settle on the 600,000 gallons a day, on a flow of 600,000 gallons. * * * He said he was satisfied that we had in excess of 600,000 gallons, if I was satisfied, and I told him I was satisfied, and Mr. Gay said it was all right. Q Call what 600,000 gallons? A Daily average flow," of water from all the tunnels. Plaintiff further testified that no bill had been rendered by him to Mr. Gay at the time of the alleged conversation and that none was rendered before the completion of the work; that the work on the tunnels was not completed until October 3, 1928, Mr. Gay having died a few days earlier in that month.

While this testimony was sufficient to support a finding that in May, 1928, the decedent expressed himself as being satisfied that there was at that time an average daily flow of water from all the tunnels of 600,000 gallons, there was no testimony whatever that the parties agreed upon the sum of $10,950 or any other sum as being due from the decedent to the plaintiff or that the decedent expressed himself as satisfied that all of the 600,000

gallons was water fit for drinking purposes or was developed underground water as distinguished from surface water finding its way into the tunnels from the Kalihi stream or other parts of the surface of the earth. (The plaintiff admitted in his testimony, and it is not disputed on this appeal, that in entering into the contract both parties contemplated the production of water fit for human consumption and of underground water as distinguished from surface drainage.) Upon the plaintiff's own testimony the work was continued, at Mr. Gay's request, until his death in October, and thereafter ceased, at the request of the executors, on October 31, 1928. In other words, at the time of the alleged stating of an account, the work was not completed and it could not have been known by the decedent whether the remainder of the work still to be performed, in the way of building portals or otherwise putting on the finishing touches of the work or in further development of water, would be done satisfactorily in accordance with the terms of the contract. So, also, the contract was that the compensation was to be measured by one year's flow of the water developed. There was no testimony tending to show when the water that was flowing out of the tunnels in May, 1928, was developed. For aught that appears to the contrary it may have been all found in the week next preceding the conversation under consideration.

While Mr. Gay expressed himself as to the average daily flow then being produced by the tunnels, he could not have known at that time what the average daily flow for one full year was to be. The acquiescence or agreement relied upon as constituting an account stated, while it related to one of the factors involved, to-wit, the quantity of water then flowing, did not relate to other essential factors, to-wit, the total of one year's flow of water, the nature of the flow as to potability, or the

completion of plaintiff's work in accordance with the terms of the contract or the amount of money due from the decedent to the plaintiff. The finding of an account stated was therefore unsupported by the evidence and cannot be sustained.

The presiding judge expressly stated in his decision that "it is now unnecessary to decide whether at that time" (meaning the date of the conversation of May, 1928,) "there was such average daily flow" (600,000 gallons) "coming from the tunnels." This is a declaration by him expressly upon the point of whether or not he did find what the quantity of water produced was and cannot be overcome by the general statement towards the end of the opinion that he found the allegations of the amended complaint on the express contract established by the evidence.

The contention that the statement relating to its being unnecessary to decide the extent of the daily flow was made by the judge solely with reference to his consideration of the subject of the account stated and that he meant to find that there was a daily flow of 600,000 gallons in connection with the count on the express contract cannot be sustained. If upon one branch of the case the judge found and declared that there was a flow of 600,000 gallons, he would not have said on another branch of the case that it was unnecessary to decide what the flow was.

Without a finding that 600,000 gallons of water, as an average daily flow for one year, was produced by the plaintiff's efforts, a judgment of $10,950 under the count upon an express contract cannot be sustained.

The exceptions are sustained, the judgment is set aside and a new trial is granted.

*J. R. Cades* (*Smith & Wild* on the brief) for plaintiff.

*J. G. Anthony* (*Robertson & Castle* on the briefs) for defendants.